# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MISSOURI

MOUNTAIN WEST SERIES OF LOCKTON
COMPANIES, LLC (formerly known as
DENVER SERIES OF LOCKTON
COMPANIES LLC,

          Plaintiff,

vs.

MICHAEL ANGELO DAURO; KATIE
BETH DOWDY; ANUJ JAIN; and SARAH
MATTHEWS,

          Defendants.

Case No. 4:19-cv-00232

## <u>DEFENDANTS' SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................... 2

    A.    Plaintiff's Allegations Concern Colorado Parties and Activities and Have No Material Connection to Missouri ................................. 2

        1.    The parties are in Colorado .................................................. 2

        2.    Plaintiff's general allegations concern Colorado activities .......................................................................... 3

        3.    Plaintiff's allegations against Matthews concern Colorado activities ............................................................ 4

        4.    Plaintiff's allegations against Dowdy concern Colorado activities ............................................................ 5

        5.    Plaintiff's allegations against Jain concern Colorado activities .......................................................................... 6

        6.    Plaintiff's allegations against Dauro concern Colorado activities ............................................................ 8

        7.    Nearly all witnesses and document custodians are in Colorado ........................................................................ 9

    B.    An Earlier-Filed Parallel Proceeding Is Pending in Colorado State Court ........................................................................ 9

    C.    *After* the Filing of the Declaratory Judgment Action in Colorado, Plaintiff Forum Shopped and Filed Multiple Retaliatory Actions ................................................................... 11

III.   ARGUMENT ............................................................................................ 11

    A.    This Court Lacks Subject-Matter Jurisdiction ................................. 11

        1.    Federal Question Jurisdiction Requires That Claims Arise From Federal Law ................................................... 12

        2.    Plaintiff's Claims Do Not Concern Federal Law ................. 13

    B.    The Court Should Dismiss the Case under the Doctrine of *Forum Non Conveniens* .............................................................. 14

    C.    The Court Should Dismiss for Lack of Personal Jurisdiction ............ 16

    D.    The Court Should Abstain from Exercising Federal Jurisdiction In View of the First-Filed Colorado Action .................. 17

    E.    The Court Should Not Enforce Plaintiff's Forum Clause .................. 19

Case 4:19-cv-00232-SRB   Document 20   Filed 04/29/19   Page 2 of 31

1.  The Forum Clause is Unreasonable and Unjust ....................................... 19

2.  The Forum Clause Seeks to Evade Colorado's
    Public Policy ................................................................................ 20

    a)  Colorado has a strong public policy against
        noncompetes ........................................................................ 20

    b)  MWS's agreements seek to deprive
        Colorado residents of the protections of
        Colorado's public policy ...................................................... 21

3.  Enforcement of the Forum Clause Would Be
    Unreasonable and Unjust Given MWS's
    Contradictory Positions ................................................................ 22

4.  The Forum Clause Does Not Eclipse *Forum Non
    Conveniens* Analysis .................................................................... 23

IV.  CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Bristol-Myers Squibb Co. v. Superior Court of Calif.*,
  137 S. Ct. 1773 (2017) ................................................................16

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ....................................................... 2, 17, 19

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .....................................................................16

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) .....................................................................14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................... 14, 15

**Other Cases**

*AGC Ref. & Filtration, LLC v. Elementa Ecuador Elecueme, S.A.*,
  6:17-03173-CV-RK, 2017 WL 9807430 (W.D. Mo. Nov. 29, 2017) ........................... 17, 18

*Brand v. Kansas City Gastroenterology & Hepatology, LLC*,
  547 F. Supp. 2d 1001 (W.D. Mo. 2008) ...............................................13

*Compass Bank v. Eager Rd. Assocs., LLC*,
  No. 4:10-CV-413 CAS, 2010 WL 4366385 (E.D. Mo. Oct. 28, 2010) ...............................17

*Cook v. Double R Performance, Inc.*,
  No. 11-4006-NKL, 2011 WL 1897212 (W.D. Mo. May 16, 2011) .............................. 19, 20

*Dakota, Minnesota & E. R.R. Corp. v. Schieffer*,
  711 F.3d 878 (8th Cir. 2013) ..........................................................13

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*,
  48 F.3d 294 (8th Cir. 1995) ............................................................17

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*,
  843 F.3d 325 (8th Cir. 2016) .................................................... 12, 13

*Homewatch Int'l, Inc. v. Navin*,
  No. 16-cv-02143-KLM, 2017 WL 4163358 (D. Colo. Sept. 20,
  2017) ...................................................................................20

*Hynes Aviation Indus., Inc. v. Sacramento E.D.M., Inc.*,
  No. 6:12-CV-03521-BCW, 2013 WL 12198837 (W.D. Mo. Aug. 1, 2013) ..................................22

*In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir. 1995) .................................................23

*IPFS Corp. v. Lopez*,
No. 4:17-CV-01059-DGK, 2018 WL 4008989 (W.D. Mo. Aug. 22,
2018) .................................................................................................................................17

*J. F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.*,
331 F. Supp. 1215 (W.D. Mo. 1971), *aff'd*, 462 F.2d 998 (8th Cir.
1972) ......................................................................................................................14, 15, 16

*Janson v. LegalZoom.com, Inc.*,
727 F. Supp. 2d 782 (W.D. Mo. 2010) ............................................................................20

*Midwest Mech. Contractors, Inc. v. Tampa Constructors, Inc.*,
659 F. Supp. 526 (W.D. Mo. 1987) .................................................................................19

*Morris v. Towers Fin. Corp.*,
916 P.2d 678 (Colo. App. 1996) ......................................................................................22

*Nutting v. RAM Sw., Inc.*,
106 F. Supp. 2d 1121 (D. Col. 2000) ...............................................................................20

*Peabody Holding Co., Inc. v. Costain Grp. PLC*,
808 F. Supp. 1425 (E.D. Mo. 1992) ............................................................................... 14

*Quick Erectors, Inc. v. Seattle Bronze Corp.*,
524 F. Supp. 351 (E.D. Mo. 1981) ..................................................................................20

*Rosenbauer Am., LLC v. Advantech Serv. & Parts, LLC*,
437 F. Supp. 2d 1081 (D.S.D. 2006) ...............................................................................19

*Thompson v. Reliant Care Mgmt. Co., LLC*,
356 F. Supp. 3d 821 (E.D. Mo. 2018) .............................................................................12

*Whelan Sec. Co. v. Kennebrew*,
379 S.W.3d 835 (Mo. banc 2013) ....................................................................................21

*Willis v. U.S. Dep't of the Treasury*,
No. 6:16-cv-03251-SRB, 2016 WL 9526411(W.D. Mo. Oct. 24,
2016) .................................................................................................................................16

## Statutes & Other Authorities

29 U.S.C. § 1001, *et. seq* .................................................................................................12

29 U.S.C. § 1132(e)(2) ..................................................................................................... 16

29 U.S.C. § 1331 ...................................................................................................................12

Col. Rev. Stat. § 8–2–113 ...............................................................................................20, 21

Restatement (Second) of Conflict of Laws § 80 (1971) ................................................23

Restatement (Second) Conflict of Laws § 187(2) .......................................................21

# I.   INTRODUCTION

This suit does not belong in Missouri or in federal court. Plaintiff's claims (state law claims for breach of contract and breach of fiduciary duty) arise from Colorado insurance professionals leaving Plaintiff to join a competitor in Denver, Colorado. The core issue presented by this case is whether Defendants may pursue their livelihoods and fairly compete in accordance with fundamental Colorado public policy and statutory law. The only reason Plaintiff filed this suit against a group of *associates* in this court is because Plaintiff failed to secure a TRO in a Missouri state court action it filed against a group of *producers*, and Plaintiff desperately wants to avoid litigating its claims in an earlier-filed parallel proceeding in Colorado. This action is a product of forum shopping.

Given the inappropriate tactical reason for this suit, it is not surprising that it suffers from numerous defects warranting immediate dismissal. First, dismissal is proper under Rule 12(b)(1) for lack of subject-matter jurisdiction. Plaintiff's concocted basis for federal question jurisdiction is ERISA. But Plaintiff's claims have nothing to do with ERISA; they are state law claims based on alleged breaches of restrictive noncompetition covenants in employment-related contracts. Resolving Plaintiff's claims will not require the Court to decide any issue under ERISA or any other federal law.

Second, venue is improper in this District under the doctrine of *forum non conveniens*. Plaintiff is headquartered in Denver and Defendants live in Denver. Nearly all material witnesses (including other current or former employees or customers of Plaintiff) are in Colorado. Nearly all of the purported acts of wrongdoing occurred in Colorado (none occurred in Missouri). Defendants executed the agreements at issue in Colorado. This is a *Colorado controversy***.** This case has no connection to Missouri.

Third, dismissal is justified under Rule 12(b)(2) for lack of personal jurisdiction: this is not an ERISA case, Defendants are not "at home" in Missouri, and there are not enough links between

Plaintiff's claims and this forum to satisfy due process.

Finally, abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), is warranted in view of a parallel state court proceeding in Colorado. Two weeks *before* Plaintiff filed this action, Defendants Sarah Matthews and Anuj Jain (along with eight other former employees of Plaintiff) sued Plaintiff in Colorado state court, seeking declaratory judgments that the restrictive noncompetition covenants and forum clauses that Plaintiff is asserting in this action are void and unenforceable. Plaintiff can and should bring its claims in that state court proceeding.

Plaintiff will seek to overcome some of these defects by reliance on a Missouri forum clause in its agreements with Defendants. The Court should not enforce that cause. It is part of an adhesion contract, it is one-sided, and enforcement would violate fundamental public policy of Colorado. Moreover, enforcement would be unreasonable and unjust in view of the contradictory positions MWS has taken regarding its forum clauses, including its inexplicable assertion that courts should not enforce its forum clauses *that require litigation in Colorado*.

For all these reasons, Defendants respectfully request that the Court dismiss this action in its entirety so the parties may litigate in Colorado.[1]

## II.    STATEMENT OF FACTS

## A.    Plaintiff's Allegations Concern Colorado Parties and Activities and Have No Material Connection to Missouri

## 1.    The parties are in Colorado

Each Defendant worked for Plaintiff Mountain West Series of Lockton Companies, LLC

---

[1] Discounting the length of the Statement of Facts, this Suggestions satisfies the 15-page limit set forth in Local Rule 7(d)(1)(A).

("MWS"). According to MWS's own pleadings, MWS is "headquartered" in Denver.[2] MWS's leadership is almost entirely in Colorado. MWS's CEO (Tate McCoy) and COO (Mark Bundy) are in Denver, and ten of the eleven members of MWS's Executive Committee are in Colorado (none are in Missouri).[3]

Defendant Sarah Matthews began working at MWS in Denver in 2000, Katie Dowdy in 2001, AJ Jain in 2005, and Michael Dauro in 2014. They each resigned on March 12, 2019 and went to work for Alliant Insurance Services, Inc. in Denver.[4] Collectively, Defendants have lived in Colorado for more than 65 years (and zero years in Missouri), and worked for MWS in Denver for more than 55 years.

## 2.     Plaintiff's general allegations concern Colorado activities

As MWS alleges in its Complaint, Defendants' agreements with MWS contain highly restrictive noncompetition covenants barring them, for two years after leaving MWS, from soliciting, accepting business from, or servicing the clients they worked with while they were at MWS, and from soliciting Lockton employees.[5] Defendants received and executed these agreements *in Colorado*. None of the Defendants negotiated the nonsolicitation and forum provisions of these agreements; MWS presented the agreements, including the restrictive covenant and forum provisions, on a "take it or leave it" basis.[6]

Without providing any facts, Plaintiff generally alleges Defendants solicited other MWS employees to leave the company, and helped Alliant recruit MWS employees by feeding Alliant

---

[2] In paragraph 13 of its complaint in the Delaware Action, Lockton alleges: "The Series is headquartered in Denver, Colorado, and also operates brokerage offices and business in Phoenix, Arizona, Las Vegas, Nevada, and Seattle, Washington." The complaint is attached as **Ex. 1** to the Shaw Declaration.

[3] Plaintiff's Response to Interrogatory No. 4 (attached as **Ex. 2** to the Shaw Declaration).

[4] Matthews Decl. ¶ 4; Dowdy Decl. ¶ 4; Jain Decl. ¶ 4; Dauro Decl. ¶ 4.

[5] *See* Complaint ¶¶ 41-44 (nonsolicitation of employees); *id.* ¶¶ 47-50 (nonsolicitation of customer accounts).

[6] Matthews Decl. ¶ 7; Dowdy Decl. ¶ 7; Jain Decl. ¶ 7; Dauro Decl. ¶ 6.

confidential information about employees.[7] These allegations are false.[8] In any event, any such alleged activity would have occurred in Colorado, where Defendants all live and work.

### 3.     Plaintiff's allegations against Matthews concern Colorado activities

Matthews has lived in Colorado since 1991 and is a licensed resident insurance broker in Colorado with appointments to sell insurance in Colorado. She does not have a license to sell insurance in Missouri. Matthews has never lived in Missouri and has visited Missouri for work purposes only about three to four times during her 19-year career at MWS, and not at all in the last five years. Matthews' primary responsibility at MWS was to service existing client accounts. At the time of her resignation, she serviced numerous Colorado clients, and no Missouri clients. She had little interaction with Lockton employees in Missouri. Nearly everyone Matthews worked with in servicing client accounts was in MWS's Denver office. Five of the six people who directly reported to Matthews were in MWS's Denver office (the other was in South Carolina). Matthews' supervisor was in Denver. Matthews was in Colorado during all of her discussions with Alliant about going to work for Alliant.[9]

Matthews entered into two agreements with MWS. One is the Stakeholder Award Plan Agreement referenced in Plaintiff's Complaint. The other is a Leadership Award Plan Agreement that Matthews entered into with Plaintiff in 2013. The Leadership Award Plan Agreement provides that all disputes relating to the agreement "shall be subject to, governed by, and construed in accordance with" Colorado law "without reference to conflict of laws principles," and that any action to enforce the provisions of the agreement shall be brought in Colorado.[10]

In its Complaint, Plaintiff generally alleges Defendants (including Matthews) solicited

---

[7] Complaint ¶¶ 66-67, 69, 82.

[8] Matthews Decl. ¶¶ 9-10; Dowdy Decl. ¶ 9; Jain Decl. ¶¶ 9-10; Dauro Decl. ¶¶ 9-10.

[9] Matthews Decl. ¶¶ 2-8.

[10] *See* Colorado Complaint ¶¶ 102-110 & 251-61 (**Ex. 3** to the Shaw Declaration).

customer accounts to move business to Alliant.[11] Plaintiff fails to allege either where those customers are located or where the solicitation took place. But, Matthews works in Colorado and has no Missouri clients. Since leaving MWS, Matthews has only communicated with three customers she serviced while at MWS, none of those customers were in Missouri, and she was in Colorado during all of those communications.[12]

Plaintiff specifically alleges Matthews emailed Lockton's confidential information to her personal email account for her later use at Alliant.[13] This is not true. In any event, any such alleged activity would have occurred in Colorado.[14]

Plaintiff also alleges Matthews "intercepted" Lockton client data intended for a customer.[15] This allegation is a gross (and intentional) mischaracterization of the facts; Lockton sent this data to the customer, and the customer then provided it to Matthews.[16] At no time has Matthews improperly taken, used, or disclosed any of Lockton's confidential information. In any event, Matthews was in Colorado when she received and accessed the information at issue, where Matthews lives and works.[17]

## 4.      Plaintiff's allegations against Dowdy concern Colorado activities

Dowdy has lived in Colorado since 2001 and is a licensed insurance broker in Colorado. Dowdy does not have a license to sell insurance in Missouri. Dowdy has never lived in Missouri and has visited Missouri for business purposes only 5-10 times during her 18 years at MWS. Her primary responsibility at MWS was to service client accounts. At the time she resigned, Dowdy

---

[11] Complaint ¶ 69.

[12] Matthews Decl. ¶ 14.

[13] Complaint ¶ 85.

[14] Matthews Decl. ¶¶ 10-12.

[15] Complaint ¶ 86.

[16] *See* 3.18.19 to 3.19.19 Email String (attached as Ex. 1 to the Matthews Declaration).

[17] Matthews Decl. ¶ 13.

was assigned to six clients, only one of which was in Missouri. In working on these accounts, nearly all of Dowdy's communications with Lockton personnel were with people in MWS's Denver office. The three people who reported to Dowdy, and Dowdy's supervisor, were in Denver. Dowdy was in Colorado during her communications with Alliant about going to work for Alliant.[18]

Plaintiff generally alleges Defendants (including Dowdy) solicited customer accounts to move business to Alliant.[19] Since leaving MWS, Dowdy has communicated with four customers that she serviced while at MWS, only one of which was in Missouri (and that communication merely involved Dowdy receiving an unsolicited text message). Dowdy was in Colorado during all of her communications with the four customers.[20]

Plaintiff specifically alleges Dowdy improperly solicited Adam Kokesh to join Alliant.[21] This is not true; all Dowdy did was send Kokesh a friend request through Facebook to stay in touch, and they have not otherwise communicated. In any event, Dowdy was in Colorado when she sent the Facebook friend request.[22]

5.      **Plaintiff's allegations against Jain concern Colorado activities**

Jain has lived in Colorado since 2005 and has a license to sell insurance in Colorado. Jain does not have a license to sell insurance in Missouri. He has not performed any services related to any projects in Missouri, nor has he sold any products related to any clients or projects in Missouri. Jain has never lived in Missouri, and during his 14-year career at MWS, he visited Missouri less than five times for business purposes and rarely communicated with any Lockton personnel in Missouri. Jain's primary responsibility at MWS was to service clients. About 75% of the clients

---

[18] Dowdy Decl. ¶¶ 2-8.

[19] Complaint ¶ 69.

[20] Dowdy Decl. ¶ 10.

[21] Complaint ¶ 87.

[22] Dowdy Decl. ¶ 9.

he worked with were in Colorado; none were in Missouri. Nearly all of his communications with other Lockton employees were with people working in MWS's Denver office. All of Jain's direct reports and his supervisor were in Denver. Jain was in Colorado during his communications with Alliant about going to work for Alliant.[23]

Plaintiff alleges Jain solicited customer accounts to move their business to Alliant.[24] Contrary to Plaintiff's allegations, before Jain resigned from MWS on March 12, 2019, Jain did not communicate with any customers about his potential or actual departure to Alliant or encourage any customers to leave Lockton or join Alliant. He worked on behalf of Lockton to the best of his abilities until the time of his resignation. Since leaving MWS, Jain has communicated with 31 businesses he serviced while at MWS. Fourteen of those businesses are in Colorado, and none are in Missouri. Jain was in Colorado for all of his communications with these companies, except for meetings in Arizona with two of them.[25]

Plaintiff further alleges Jain printed out documents for him to later use at Alliant.[26] This is false. Jain only printed out documents in the ordinary course of business so he could do his work for MWS. When he resigned, he left any printed documents he still had in his MWS office. In any event, all of Jain's alleged printing activities occurred in MWS's Denver office.[27]

Plaintiff also alleges Jain tried to destroy evidence by resetting his MWS-issued cellphone.[28] Jain did not destroy evidence. He merely reset his phone so MWS could not access Jain's personal photographs and other private information. In any event, Jain did this while in

---

[23] Jain Decl. ¶¶ 2-8.

[24] Complaint ¶¶ 69, 71, 73-81.

[25] Jain Decl. ¶¶ 13.

[26] Complaint ¶¶ 70, 83.

[27] Jain Decl. ¶¶ 10-11.

[28] Complaint ¶ 72.

Colorado.[29]

## 6. Plaintiff's allegations against Dauro concern Colorado activities

Dauro has lived in Colorado since 2014. He has never lived in Missouri, and he has visited Missouri for business purposes only about five times during his five years with MWS. At MWS, Dauro worked in personnel recruiting. About 85% of the people Dauro recruited were in Colorado. Dauro does not recall recruiting or hiring any person in Missouri. Dauro worked with 13-14 people in recruiting and all but one of those people were located in MWS's Denver office (the other was in Arizona). Dauro's supervisor was in Denver. Dauro was in Colorado when he communicated with Alliant about going to work for Alliant.[30]

Plaintiff generally alleges Defendants (including Dauro) solicited customer accounts to move business to Alliant.[31] Dauro has not been involved in soliciting customer accounts—either at MWS or at Alliant.[32]

Plaintiff also alleges Dauro printed out confidential Lockton documents for him to later use at Alliant.[33] This too is false. In the ordinary course of performing his work responsibilities for MWS, Dauro often printed out documents, and he either shredded or otherwise discarded those documents while still at MWS, or left them at MWS when he went to Alliant. In any event, Dauro's alleged printing activities occurred in MWS's Denver office.[34]

Plaintiff further alleges Dauro disparaged Lockton to a prospective producer member.[35] This is another false allegation (indeed, the story makes no sense because this was a prospective

---

[29] Jain Decl. ¶¶ 12.

[30] Dauro Decl. ¶¶ 2-7.

[31] Complaint ¶ 69.

[32] Dauro Decl. ¶ 5.

[33] Complaint ¶¶ 70, 83(a).

[34] Dauro Decl. ¶¶ 9-12.

[35] Complaint ¶ 84.

producer Dauro was attempting to recruit to Lockton). In any event, Dauro was in Colorado when he made the allegedly disparaging statement, and the prospective producer member he was recruiting was in Seattle.[36]

### 7. Nearly all witnesses and document custodians are in Colorado

The key witnesses with knowledge about this dispute are in Colorado:

- All 26 of the people who left MWS's Denver office and joined Alliant's Denver office reside in the Denver area.[37]

- MWS's CEO (Tate McCoy) and COO (Mark Bundy) are in Denver, and all of Defendants' supervisors are in Denver.[38]

- A majority of the client accounts that Matthews, Dowdy and Jain collectively serviced while they were at MWS are in Colorado, and nearly all of the Lockton employees that worked with Matthews, Dowdy and Jain in servicing client accounts were at MWS in Colorado.[39]

Indeed, in connection with expedited discovery in a related action, each side identified witnesses/custodians likely to possess relevant information, and *39 of the 47 identified individuals are in Colorado*, while only three are in Missouri.[40]

### B. An Earlier-Filed Parallel Proceeding Is Pending in Colorado State Court

On March 12, Defendants Matthews and Jain, along with eight other former MWS employees (producers Derek Cady, Nicholas Hansen, Robert Kinder, Charles M. McDaniel,

---

[36] Dauro Decl. ¶ 13.

[37] *See* Complaint at p. 2.

[38] Matthews Decl. ¶ 6; Dowdy Decl. ¶ 6; Jain Decl. ¶ 6; Dauro Decl. ¶ 5.

[39] Matthews Decl. ¶ 6; Dowdy Decl. ¶ 6; Jain Decl. ¶ 6.

[40] *See* Shaw Decl. ¶ 9. Two witnesses/custodians are in Los Angeles, one is in San Diego, one is in Houston, and another is in Chicago.

Raymond Paolini, Richard Schwartzenberger and Greg Winter, along with Jeremy Hutchinson), filed a lawsuit in Colorado state court (the "First-Filed Colorado Action") against five Lockton entities, including Plaintiff MWS. Matthews and Jain (and the other Colorado plaintiffs) are seeking declaratory judgments that the restrictive noncompete covenants in their Lockton agreements are void and unenforceable, that choice of law provisions requiring that their noncompetition covenants be governed by Missouri law are void and unenforceable, and that forum clauses requiring that any action relating to the noncompetition covenants be brought in Missouri are void and unenforceable.[41]

Matthews and Jain are asking for judicial declarations concerning the same agreements Plaintiff is asserting in this case. In addition, Matthews is seeking declaratory judgments regarding her Leadership Award Plan Agreement (discussed above in Section II.A.3), which also includes restrictive noncompetition covenants, but provides that any disputes regarding those covenants be adjudicated in Colorado under Colorado law.[42]

Hutchinson's at-issue agreement with Plaintiff also includes Colorado choice-of-law and forum clauses.[43]

Plaintiff and the other Lockton defendants have moved to dismiss the First-Filed Colorado Action. In the motion, MWS argues the court should ignore Hutchinson's Colorado forum clause—which MWS placed in his agreement—and force Hutchinson to also litigate in Missouri.[44]

The Colorado court has ordered a Case Management Conference to occur before May 17, 2019 to discuss discovery and possibly set a trial date.[45]

---

[41] A copy of the Colorado complaint is attached as **Ex. 3** to the Shaw Declaration.

[42] *See* Colorado Complaint ¶¶ 102-110 & 251-61 (**Ex. 3** to the Shaw Declaration).

[43] Colorado Complaint ¶ 78 (**Ex. 3** to the Shaw Declaration).

[44] *See* **Ex. 4** to the Shaw Declaration at 9-10 (italics in original).

[45] 4.15.19 Order, attached as **Ex. 5** to the Shaw Declaration.

C.  *After* the Filing of the Declaratory Judgment Action in Colorado, Plaintiff Forum Shopped and Filed Multiple Retaliatory Actions

Plaintiff has filed *three* lawsuits since Defendants Matthews and Jain and others filed the First-Filed Colorado Action. On March 13, Plaintiff filed suit and a motion for emergency relief against producers Cady, Hansen, Kinder, McDaniel, Paolini, Schwartzenberger and Winter (the "Missouri State Action").[46] On March 15, the court *denied* Plaintiff's motion for emergency relief, and the parties are now involved in preliminary injunction proceedings. On April 22, the defendants filed a motion to dismiss the suit on personal jurisdiction and *forum non conveniens* grounds.[47]

Apparently dissatisfied with the Missouri court's rejection of its request for a TRO, and desiring to burden and harass its former employees and their new employer with multiple concurrent proceedings, Plaintiff went forum shopping. Thus, on March 22, Plaintiff sued Alliant in Delaware Chancery Court (the "Delaware Action").[48] And on March 26, Plaintiff filed this action against four non-producers. The parties are now involved in expedited preliminary injunction proceedings in the Delaware Action.

III.  ARGUMENT

A.  This Court Lacks Subject-Matter Jurisdiction

Plaintiff's Complaint alleges Defendants breached restrictive noncompetition covenants in contracts allegedly governing their employment (the "Agreements"), and asserts counts for "Injunctive Relief," "Breach of Contract," "Breach of Fiduciary Duty," and "Unjust Enrichment." Plaintiff asserted the same claims against the producer defendants in the Missouri State Action. Yet in that case, Plaintiff alleges jurisdiction properly lies in the state court and that Missouri state

---

[46] A copy of the Verified Amended Petition filed in the Missouri State Court Action on March 21, 2019 is attached as **Ex. 6** to the Shaw Declaration.

[47] *See* **Ex. 7** to the Shaw Declaration.

[48] The Delaware complaint is attached as **Ex. 1** to the Shaw Declaration.

law applies,[49] while in this case Plaintiff claims federal jurisdiction is proper "because the Agreements are deferred compensation agreements governed by 29 USC § 1001, *et seq*." (ERISA).[50] However, Plaintiff's has not asserted any ERISA claim or alleged any substantial issue that would require the Court to examine ERISA or any other federal law. As such, there is subject-matter jurisdiction over Plaintiff's claims.

## 1. Federal Question Jurisdiction Requires That Claims Arise From Federal Law

Federal courts may exercise "federal question" subject-matter jurisdiction only when the action "aris[es] under the Constitution, laws, or treaties of the United States." 29 U.S.C. § 1331. The "question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). Federal question jurisdiction only exists "if the well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes*, 843 F.3d at 329.

Courts must dismiss suits for lack of subject-matter jurisdiction where resolution of the claims is independent of the cited federal statute. For example, in *Great Lakes*, 843 F.3d at 329, the court ruled there was no subject-matter jurisdiction because the plaintiff had failed to allege any federal claims aside from a fleeting reference to a federal law. Similarly, in *Thompson v. Reliant Care Mgmt. Co., LLC*, 356 F. Supp. 3d 821, 827 (E.D. Mo. 2018), the court granted a motion to dismiss because the plaintiff's claim—although couched as an ERISA issue—was just a state contract cause of action.

---

[49] *See* Missouri State Action Verified Petition at ¶¶112 *et seq.* & 215 (**Ex. 6** to the Shaw Declaration).

[50] Complaint ¶ 39.

## 2.     Plaintiff's Claims Do Not Concern Federal Law

The "vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Great Lakes,* 843 F.3d at 329 (quoting *Merrell Dow*, 478 U.S. at 808). That is not the case here. Plaintiff has not asserted a single count under ERISA (or any other federal law).[51]

But even were the Court to look further, it should conclude ERISA cannot support the assertion of jurisdiction. In *Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 711 F.3d 878, 881 (8th Cir. 2013), the Eighth Circuit held "there is no jurisdiction if the assertion of ERISA is 'so completely devoid of merit as to not involve a federal controversy'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 82, 89 (1998)). This district uses a three-part test in deciding whether a claim falls within ERISA:

> a court must first determine whether the plaintiff is eligible to bring a claim under that section. ERISA § 502(a) is available only to ERISA plan participants and beneficiaries. Second, the subject matter of an eligible plaintiff's state law claim must fall within the scope of § 502(a). In other words, the claim must seek to recover benefits, to enforce rights, or to clarify rights to future benefits. Third, the benefits or rights that the plaintiff seeks to recover, clarify, or enforce must arise under the terms of the plaintiff's plan.

*Brand v. Kansas City Gastroenterology & Hepatology, LLC*, 547 F. Supp. 2d 1001, 1004 (W.D. Mo. 2008) (internal citations omitted). Plaintiff's Complaint does not plead even one of the required elements. And Plaintiff cannot satisfy any of these elements, because Plaintiff is not a beneficiary or a participant in any averred ERISA plan, Plaintiff does not seek to recover or enforce rights to ERISA plan benefits, and Plaintiff does not assert any claim requiring an ERISA-based interpretation of any ERISA plan.

Moreover, Plaintiff's "well-pleaded complaint" provides no indication that the Court will be called upon to determine ***any*** issue—let alone any ***substantial*** issue—arising under ERISA or

---

[51] *Compare* Complaint ¶ 39 (contending subject-matter jurisdiction exists by virtue of ERISA) *with* Complaint at Counts I-IV (asserting only state common law counts).

any other federal law. Plaintiff's causes of action are state law claims all based on purported breaches of restricted noncompetition covenants. They have nothing to do with ERISA, any other federal statute, or other federal law. Plaintiff's one conclusory assertion that the agreements at issue are part of an ERISA-based deferred compensation plan does not transform its state law claims into federal causes of action and vest this Court with jurisdiction. *See Great Lakes*, 843 F.3d at 329.

## B. The Court Should Dismiss the Case under the Doctrine of *Forum Non Conveniens*

"It is well established that where there exists an alternative forum which will take jurisdiction and in which the balance of convenience lies, the federal courts possess the inherent power to refuse jurisdiction and dismiss the pending action under the doctrine of *forum non conveniens*." *J. F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.*, 331 F. Supp. 1215, 1220 (W.D. Mo. 1971), *aff'd*, 462 F.2d 998 (8th Cir. 1972).

> The principles that govern a motion to dismiss on *forum non conveniens* grounds are well settled. The Court must first determine whether there is an adequate alternative forum available in which the dispute can be resolved. If there is such a forum, the Court must balance a number of private and public interest factors in order to determine whether they outweigh the deference ordinarily attended to the plaintiff's choice of forum.

*Peabody Holding Co., Inc. v. Costain Grp. PLC*, 808 F. Supp. 1425, 1441 (E.D. Mo. 1992). In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947), the U.S. Supreme Court recited factors to be considered in applying the doctrine. Private interest factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions to the enforcibility [sic] of a judgment if one is obtained.

*Id*. at 508. The public interest include the

> administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). There is also a public interest in ensuring a plaintiff does not, "by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Gilbert*, 330 U.S. at 508-09.

All these factors favor litigating in the available alternative forum—Colorado. Access to proof is greater in Colorado, given that an overwhelming number of party and non-party witnesses are in Colorado, and subject to subpoenas issued by a Colorado court. (*See, supra,* Section II.A.) Any judgment against Defendants will have to be enforced in Colorado. Maintaining this suit, in view of the other related actions, will further congest the courts. Because this is a Colorado-based controversy, Colorado owns the "local interest" in resolving the dispute. And Plaintiff, by suing Defendants in this forum, is vexing, harassing and oppressing Defendants by trying to burden them with multiple proceedings and by seeking to deprive them of the protections of the law and public policy of the state in which they live and work.

*J.F. Pritchard* is instructive. There, the plaintiff sued under a contract made between two Canadian corporations for work to be performed in Canada. *J.F. Pritchard,* 331 F. Supp. at 1221. The court noted that only a small minority of total witnesses were in Missouri and those witnesses would also have to appear in a pending Canadian suit. *Id*. The court also noted that because the defendants were not Missouri residents, any judgment would have to be enforced in a foreign jurisdiction. *Id*. at 1222. In light of these factors, the court dismissed the case under the doctrine of *forum non conveniens.* Similarly, Plaintiff is suing under a contract made with Colorado residents concerning work to be performed in Colorado; a very small minority of witnesses is in

Missouri, and those same witnesses will also have to appear in Colorado; Defendants are not residents of Missouri; and any judgment will have to be enforced in Colorado. Thus, as in *J.F. Pritchard*, this Court should dismiss the case on *forum non conveniens* grounds.

## C. The Court Should Dismiss for Lack of Personal Jurisdiction

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Willis v. U.S. Dep't of the Treasury*, No. 6:16-cv-03251-SRB, 2016 WL 9526411, at *2 (W.D. Mo. Oct. 24, 2016) (Bough, J.).

Plaintiff cannot rely on ERISA to satisfy personal jurisdiction. ERISA provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). As discussed above, no Defendant resides or "may be found" in Missouri. They are in Colorado. Further, the alleged breaches of the various agreements and breaches of duty allegedly occurred in Denver. Finally, Plaintiff cannot plead that its Plans are administered in Missouri. Plaintiff MWS, where Defendants all worked, is headquartered in Colorado and its leadership is in Colorado.

Plaintiff's only other basis for personal jurisdiction is the forum clause in Defendants' contracts with Plaintiff. As discussed below, the Court should not enforce the forum clause. As such, there can be no general personal jurisdiction in this case because Defendants have never lived in Missouri and therefore cannot be considered "at home" in this District[52]; and there can be no specific jurisdiction because there is no "direct connection" or "adequate link" between Plaintiff's claims and Defendant's minimal contacts with Missouri.[53]

---

[52] *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (court may assert general jurisdiction over defendant whose "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially ***at home*** in the forum State'").

[53] *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1779, 1781 (2017) (must show "direct connection" or "adequate link" between forum and claims).

**D.      The Court Should Abstain from Exercising Federal Jurisdiction In View of the First-Filed Colorado Action**

"The *Colorado River* abstention doctrine grants a federal court discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court." *Compass Bank v. Eager Rd. Assocs., LLC*, No. 4:10-CV-413 CAS, 2010 WL 4366385, at *3 (E.D. Mo. Oct. 28, 2010) (citing *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)). To be parallel, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *IPFS Corp. v. Lopez*, No. 4:17-CV-01059-DGK, 2018 WL 4008989, at *2 (W.D. Mo. Aug. 22, 2018).

The First-Filed Colorado Action and this suit are parallel. Both suits concern the same common nucleus of operative facts. Defendants Jain and Matthews are plaintiffs in the Colorado suit, and have asserted claims relating to the same restrictive covenants that underlie Plaintiff's claims in this action. Plaintiff could easily add its claims against Dauro and Dowdy to the First-Filed Colorado Action. Accordingly, resolution of the Colorado lawsuit easily could "fully dispose of the claims" presented in this case. *IPFS Corp.*, 2018 WL 4008989 at *2.

In *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 48 F.3d 294, 297 (8th Cir. 1995), the Eighth Circuit outlined factors for a court to consider in determining whether a federal court should abstain from exercising jurisdiction:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority-not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

"The avoidance of piecemeal litigation receives the greatest weight in favor of abstention

or dismissal." *AGC Ref. & Filtration, LLC v. Elementa Ecuador Elecueme, S.A.*, No. 6:17-03173-CV-RK, 2017 WL 9807430, at *3 (W.D. Mo. Nov. 29, 2017).

These factors all weigh in favor of abstention in this case:

- **This federal forum is inconvenient.** This forum is inconvenient and inappropriate, given that an overwhelming number of parties and witnesses reside in Colorado. Furthermore, Colorado residents executed the contracts at issue in Colorado, and the breaches alleged by Plaintiff occurred, to the extent they occurred at all, in Colorado. (*See, supra,* Section II.A.)

- **Maintaining separate actions will result in piecemeal litigation**. Exercising jurisdiction in this case will guarantee that multiple forums will be adjudicating whether former MWS employees breached restrictive covenants. This will result in inefficiencies and raises the possibility of inconsistent determinations.

- **The First-Filed Colorado Action has priority.** The First-Filed Colorado Action was filed first, is further along (a CMC will be held by May 17), and was brought by Colorado residents seeking declaratory judgments regarding their rights and obligations under the law of the state in which they live and work. Plaintiff only filed this action as a forum-shopping tactic after the court in the Missouri state court denied Plaintiff's TRO motion.

- **State law governs the claims in this case.** This action involves state law claims for breach of contract and breach of fiduciary duty, and a crucial issue is the enforceability of Plaintiff's restrictive covenants under Colorado law. There is no substantive issue of federal law for the Court to resolve.

- **Plaintiff's rights will be protected in Colorado.** Plaintiff can litigate its claims against Defendants in the First-Filed Colorado Action. Jain and Matthews are already

parties there, and Plaintiff can easily add its claims against Dauro and Dowdy.

Because the *Colorado River* factors weigh in favor of abstention, this Court should abstain from exercising jurisdiction over this case and dismiss it.[54]

## E. The Court Should Not Enforce Plaintiff's Forum Clause

Knowing it cannot prevail in traditional a *forum non conveniens* analysis, Plaintiff alleges personal jurisdiction and venue are proper by virtue of the forum clause,[55] which purports to require that any "action involving any disputes, claims or issues that in any way pertain" to the agreements "shall be brought exclusively" in a Missouri court.[56] The Court should reject Plaintiff's reliance on the forum clause.

## 1. The Forum Clause is Unreasonable and Unjust

A forum clause must be obtained through "freely negotiated agreements absent fraud and overreaching and its enforcement must not be unreasonable and unjust." *Midwest Mech. Contractors, Inc. v. Tampa Constructors, Inc.*, 659 F. Supp. 526, 530 (W.D. Mo. 1987). Courts will not enforce unreasonable and unjust clauses.

In *Cook v. Double R Performance, Inc.*, No. 11-4006-NKL, 2011 WL 1897212 (W.D. Mo. May 16, 2011), the court noted that "[m]any courts have refused to enforce a forum selection clause on the grounds of unfairness if the contract was entered into under circumstances that caused it to be adhesive," which the court described as a contract "in which the parties have unequal standing in terms of bargaining power (usually a large corporation versus an individual) and often involve take-it-or-leave-it provisions in printed form contracts." The court further stated that another "factor that militates in favor of the fairness" of a forum clause "is the neutral and

---

[54] Should the Court ultimately decide not to abstain, at the very least, it should stay the case in view of the other pending actions. *See, e.g., Rosenbauer Am., LLC v. Advantech Serv. & Parts, LLC*, 437 F. Supp. 2d 1081, 1084 (D.S.D. 2006) (denying motion to abstain, but granting a stay).

[55] Complaint ¶ 38 (alleging personal jurisdiction and venue under the forum clause).

[56] Ex. A-B to Complaint at § 6(e). *See also* Ex. C and D to the Complaint at § 5.

reciprocal nature" of the clause. *Id.* For example, the court noted that a clause that provided "that the litigation shall be brought at the principal place of business of the defendant" was reciprocal and supported by public policy discouraging "hasty litigation." *Id.* at *7. In applying these standards, the court denied the defendants' motion to dismiss, finding that enforcing the forum clause at issue "would be unjust and unreasonable" because the "contract was adhesive" and the "clause was neither neutral nor reciprocal" because it required litigation in Canada, where the movants resided. *Id.* at *6-7.[57]

Under these considerations, Plaintiff's forum clause is unjust and unreasonable. First, the clause is part of adhesion contracts. There was inequitable bargaining power between Plaintiff (an entity of a multi-billion dollar company) and Defendants (mid-level employees). There were no negotiations over the substantive terms of the agreements, including the forum clause. Rather, Plaintiff offered the agreements as "take it or leave it." Second, Plaintiff's forum clause provides for a forum that is neither neutral nor reciprocal. By choosing Jackson County, Missouri, Plaintiff seeks to impose upon Defendants a forum where ***Lockton's*** (not MWS's) global headquarters are located, in hopes of exercising home court advantage over weaker, distant parties. And, significantly, Plaintiff's unilaterally imposed forum was based on its desire to deprive Defendants of the protections of Colorado law, which disfavors noncompete agreements.

## 2. The Forum Clause Seeks to Evade Colorado's Public Policy

### a) Colorado has a strong public policy against noncompetes

"Colorado has a strong public policy against non-compete clauses" such as those in Plaintiff's asserted agreements. *Homewatch Int'l, Inc. v. Navin*, No. 16-cv-02143-KLM, 2017 WL

---

[57] *See also, e.g., Janson v. LegalZoom.com, Inc.*, 727 F. Supp. 2d 782, 787 (W.D. Mo. 2010) (court declined to transfer case to California pursuant to forum clause, finding that issue concerning Missouri statute was best "addressed by Missouri courts under Missouri law for the benefit of Missouri citizens"); *Quick Erectors, Inc. v. Seattle Bronze Corp.*, 524 F. Supp. 351, 356-57 (E.D. Mo. 1981) (court declined to enforce clause requiring litigation in New York because if suit was brought in New York, claim likely would be time barred; court noted that "Plaintiff is a Missouri citizen who entered into the contract and made preparations for performance of the contract in Missouri").

4163358 at *4 (D. Colo. Sept. 20, 2017). "This public policy is embodied in Col. Rev. Stat. § 8–2–113." *Nutting v. RAM Sw., Inc.*, 106 F. Supp. 2d 1121, 1124 (D. Colo. 2000). Section 8-2-113(2) provides that "***Any covenant not to compete*** which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer ***shall be void*** …"[58]

### b) MWS's agreements seek to deprive Colorado residents of the protections of Colorado's public policy

In contrast to Colorado law, "Missouri courts generally enforce a non-compete agreement if it is demonstrably reasonable," *i.e.*, "if it is no more restrictive than necessary to protect the legitimate interests of the employer." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841-42 (Mo. banc 2013).

Plaintiff's various agreements seek to deprive Defendants of the protections of their resident state's fundamental public policy, longstanding statutory law, case law, and legal system, and subject them to less favorable Missouri law, through a triad of provisions. First, the agreements provide that any action arising out of or relating to the agreements must be brought exclusively in Missouri. Second, the agreements provide that any tribunal hearing a claim relating to the agreements must apply Missouri law "without reference to conflicts of laws principles"—meaning the court should ignore Restatement (Second) Conflict of Laws § 187(2) and any consideration of Colorado public policy.[59] (*E.g.,* Leadership Award Plan Agreement § 6(e).) And third, as discussed above, the agreements all include broad noncompete agreements that violate COLO. REV. STAT. 8-2-113 and Colorado's public policy.[60] Were courts to uphold Plaintiff's scheme, all of its hundreds

---

[58] The prohibition does not apply to contracts "for the purchase and sale of a business or the assets of a business" or "for the protection of trade secrets," to provisions seeking recovery of education and training expenses for employees who have worked at a company for less than two years, and to "[e]xecutive and management personnel." COLO. REV. STAT. § 8-2-113(2)(a)-(d). None of these exceptions apply to Defendants.

[59] Under a Section 187(2) analysis, any reviewing court (including this Court) would have to consider Colorado's fundamental public policy in deciding which state court's law to apply.

[60] Defendants do not concede that the covenants at issue are reasonable under Missouri law; to the contrary, the covenants at issue are also overbroad and unreasonable even under Missouri law.

of *Colorado* employees would have to sue or be sued 600 miles away in Missouri and be bound by Missouri law, and Colorado's public policy would be eviscerated. The clause would block Colorado courts from ever ruling on the enforceability (or lack thereof) of Plaintiff's onerous anti-competitive covenants.

In view of this oppressive scheme, the Court should refuse to enforce the forum clause and allow Defendants' claims to be heard in Colorado, where a Colorado court can decide the enforceability of MWS's noncompetition covenants under Colorado law. Indeed, Colorado courts have invalidated forum clauses that are contrary to public policy. For example, in *Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996), the Colorado Court of Appeals invalidated a forum clause on the ground its application would contravene Colorado public policy favoring the right of Colorado employees to recover past due wages by filing civil actions in the Colorado courts.

## 3. Enforcement of the Forum Clause Would Be Unreasonable and Unjust Given MWS's Contradictory Positions

The entire purpose of a forum selection clause is to create consistency, certainty, and preserve judicial economy. *Hynes Aviation Indus., Inc. v. Sacramento E.D.M., Inc*., No. 6:12-CV-03521-BCW, 2013 WL 12198837, at *4 (W.D. Mo. Aug. 1, 2013). Here, Plaintiff is using the forum clauses to do the opposite: create inconsistency, uncertainty, and waste judicial resources across multiple different jurisdictions.

As discussed above, Plaintiff's forum clauses are not consistent. Some of its agreements with Colorado personnel have Missouri forum clauses, while others have Colorado forum clauses. When it suits its own purpose, Plaintiff ignores its own forum clause, or the purported policy behind it. In the First-Filed Colorado Action, Plaintiff is explicitly arguing against enforcement of its own Colorado forum clause. And in the Delaware Action, Plaintiff opted to sue in Delaware rather than in Missouri (as its asserted clause requires), having found the Missouri state court

unreceptive to its application for a temporary restraining order. (*See, supra*, Section II.C.)

Plaintiff's contradictory positions concerning its varying forum clauses are further proof of Plaintiff's intent to burden its former employees with concurrent litigation in multiple forums, and to deprive its Colorado employees of the protections of their home state's laws and public policy, to block its former employees from fairly competing against Plaintiff. The most fair and efficient approach is to dismiss this action and have the dispute resolved in the context of a single action—the First-Filed Colorado Action.

### 4.    The Forum Clause Does Not Eclipse *Forum Non Conveniens* Analysis

Courts treat the existence of a forum clause as, at most, just one factor to consider along with other factors. *See* Restatement (Second) of Conflict of Laws § 80 (1971) ("Private individuals have no power to alter the rules of judicial jurisdiction."). For the reasons discussed above, Plaintiff's forum clause is unfair, unreasonable and contrary to the public policy of the state that has the greatest connection to the claims at issue (Colorado). But even more, the forum clause, even if enforceable, only afforded Plaintiff a right to ***bring*** the case in Missouri (which Plaintiff has exercised). There is neither justification nor a basis to construe the forum clause as conveying a broader right to litigate the case ***to conclusion*** in Missouri, despite countervailing considerations. Indeed, where, as here, the clause purports to create jurisdiction that would not otherwise exist, the effect is to deprive Defendants of the due process rights they would otherwise have under the U.S. and state constitutions. Contractual clauses purporting to waive constitutional rights must be clear and unambiguous. *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir. 1995) (citing *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972)). In this instance, the language—drafted by Plaintiff and therefore construed against it—certainly does not clearly, unambiguously, unmistakably, and conspicuously require Defendants to be stuck forever in a court that is inconvenient.

# IV. CONCLUSION

For all the foregoing reasons, Defendants respectfully respect that the Court dismiss this action in its entirety.

Dated: April 29, 2019.                    Respectfully Submitted,

                                       **BERKOWITZ OLIVER LLP**

                                       */s/  John W. Shaw*
                                       John W. Shaw (MO Bar # 26205)
                                       Anthony J. Durone (MO Bar # 43872)
                                       Stacey R. Gilman (MO Bar # 55690)
                                       Jordan L. Glasgow (MO Bar # 69096)
                                       2600 Grand Boulevard, Suite 1200
                                       Kansas City, Missouri  64108
                                       Telephone:  (816) 561-7007
                                       Facsimile:  (816) 561-1888
                                       jshaw@berkowitzoliver.com
                                       adurone@berkowitzoliver.com
                                       sgilman@berkowitzoliver.com
                                       jglasgow@berkowitzoliver.com

                                       **MORGAN LEWIS BOCKIUS LLP**

                                       Debra L. Fischer (*pro hac vice* pending)
                                       Seth M. Gerber (*pro hac vice* pending)
                                       Telephone:   (310) 907-1000
                                       Facsmile:     (310) 907-1001
                                       debra.fischer@morganlewis.com
                                       seth.gerber@morganlewis.com

                                       ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I certify that on April 29, 2019, a true and accurate copy of the above and foregoing was filed via the Court's electronic filing system, which transmitted notice of said filing via electronic mail to counsel of record.

_/s/ John W. Shaw_
Attorney for Defendants